985 F.2d 563
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Robert DUNCAN, Defendant/Appellant.
 No. 91-3358.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 2, 1993.*
Decided Feb. 5, 1993.
 
 Before POSNER and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Robert Duncan, who was convicted of possessing stolen property, 18 U.S.C. § 649, challenges the district court's calculation of the value of the property. We agree with the district court that Duncan stole property having a value of over $40,000, and hence we affirm its sentencing decision.
 
 I. BACKGROUND
 
 2
 On February 24, 1989, truck driver Timothy Pettway picked up a trailer containing 1,620 cases of Oscar Mayer hot dogs, which he was to deliver in Joliet, Illinois. Before reaching Joliet, Pettway stopped in Chicago and parked the trailer in a vacant lot near his home. In the lot, Pettway unhooked the trailer from the cab, a process taking about fifteen minutes. He then drove the cab to his house. When Pettway returned for the trailer the next morning, he discovered that it had been stolen. From tire tracks, Pettway surmised that the thief had traveled eastbound on 51st Street, the only route out of the neighborhood for a 31'6" trailer.
 
 
 3
 On February 28, 1989, the trailer reappeared behind an abandoned factory. Eugene Henley and Wayne Tucker were unloading the trailer when defendant Robert Duncan and his friend Joseph Johnson arrived in a Ryder rental truck. According to Tucker, Duncan forbid Henley to take any of the hot dogs, claiming that "this stuff on the truck is ours." Duncan later told Henley that he could take some hot dogs if he helped unload the trailer. As Duncan and the others emptied the trailer, the police arrived, and Duncan ran away.
 
 
 4
 Duncan was later captured and questioned by the police. At questioning, Duncan claimed that he was unemployed. In truth, Duncan worked as a local (in-city) truck driver. Through his work, Duncan had access to truck cab on the day that the trailer was stolen. Duncan had taken a red Mack cab home with him on February 24, 1989, although he knew that taking trucks home was prohibited. Duncan returned the cab on March 4, 1989.
 
 
 5
 On October 17, 1990, a grand jury charged Duncan and Johnson with possessing the stolen hot dogs. Johnson pleaded guilty to the charge, but Duncan proceeded to a bench trial before the district court.
 
 
 6
 After finding Duncan guilty as charged, the court held a sentencing hearing. When calculating Duncan's offense level under the Federal Sentencing Guidelines, the court considered both the value of the trailer and the value of the hot dogs. The court explained:
 
 
 7
 I think there is adequate evidence here to believe that Mr. Duncan was involved in the theft of that trailer. He wasn't charged with that, he's not convicted of it, but I think there is adequate evidence to show that he had the cab, a cab is needed to transport it; he took it just before this all happened and returned it after this is all over. We know that he had to have one of those to transport it, and here's a person who has got one.
 
 
 8
 The court found a loss of $40,000 and sentenced Duncan to twenty-one months imprisonment. Duncan appeals, challenging the court's decision to include the trailer in its calculations.
 
 II. ANALYSIS
 
 9
 The Federal Sentencing Guidelines provide a base offense level of four for all thefts. U.S.S.G. § 2B1.1(a). The district court must then increase that offense level for any loss over one hundred dollars. U.S.S.G. § 2B1.1(b)(1); see also U.S.S.G. § 2B1.1(b)(1)(H) (a loss of over $40,000 increases the base offense level by seven levels). The loss is calculated by adding together the amount involved in the offense of conviction with the amount involved in acts that the court determines by a preponderance of the evidence "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A); United States v. Nafzger, 974 F.2d 906, 916 (7th Cir.1992); United States v. White, 888 F.2d 490, 497 (7th Cir.1989). We will not overturn the district court's findings unless clearly erroneous. United States v. Vopravil, 891 F.2d 155, 157 (7th Cir.1989).
 
 
 10
 The inclusion of the value of the trailer in the sentencing calculations was not clearly erroneous. The government presented strong proof that Duncan stole, or at a minimum aided and abetted the stealing of, the trailer. The government showed that Duncan took a cab from his employer the day before the trailer was stolen. It also proved that someone with extensive knowledge of trucking hooked a cab to the trailer, located the only route out of the neighborhood, and negotiated the treacherous route to the factory. Because truck drivers Duncan and Johnson both asserted ownership over the contents of the trailer, the district court could find, by a preponderance of the evidence, that Duncan either stole the trailer or helped Johnson by providing a cab. Either act would make Duncan responsible for the value of the trailer and its cargo. U.S.S.G. § 1B1.2(a)(1)(A) (aiders and abettors are punished as if principals).
 
 
 11
 Duncan's sentence is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs